In re Bobby Joe HOWELL, Debtor.

William D. SMALLWOOD, Plaintiff,

v.

Bobby Joe HOWELL, Defendant.

Bankruptcy No. 93–10497.
Adv. No. 93–0568.

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

Feb. 14, 1995.

Ted M. Hunderup, Humboldt, TN, for plaintiff.

Albert B. Merkel, Jackson, TN, for defendant/debtor.

William L. Guy, Chapter 7 Trustee, Jackson, TN.

## MEMORANDUM OPINION AND ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

G. HARVEY BOSWELL, Bankruptcy Judge.

This matter is before the court on a complaint to determine the dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4). By virtue of 28 U.S.C. § 157(b)(2)(I), this matter is a core proceeding. Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following are the court's findings of fact and conclusions of law.

### FACTS

The plaintiff, William D. Smallwood, testified that on July 31, 1992 he went to Galleria Crown Jewelers, Inc. ("Galleria") to purchase a Rolex watch. Galleria did not have the particular watch in stock that he wished to

purchase, however, an employee of Galleria informed Mr. Smallwood that the watch could be ordered from another jeweler if he left a deposit with Galleria. On that same date, Mr. Smallwood tendered a check for $2500.00, made payable to Galleria, as a downpayment on the watch. It was understood between the parties that the balance of the purchase price of the watch, $4500.00, would be due upon delivery of the watch to Mr. Smallwood.

After placing the order and making the downpayment, Mr. Smallwood decided that he no longer wished to purchase the watch. Mr. Smallwood contacted the debtor/defendant, Bobby Joe Howell, then President of Galleria, and told him that he did not wish to complete the purchase of the watch. It should be noted that this was the first time that Mr. Smallwood and Mr. Howell spoke with one another regarding this transaction. Mr. Howell informed Mr. Smallwood that it was too late to stop the transfer of the watch from the supplying jeweler, however, he told him that he could complete the purchase of the watch when it arrived and that he would in turn sell the watch to another customer on Mr. Smallwood's behalf. Mr. Smallwood would then receive most, if not all, of his money back.

After the watch arrived at Galleria, Mr. Smallwood paid the balance of the purchase price ($4500.00) by check payable to the order of Galleria and dated August 7, 1992. In return, Mr. Howell gave to Mr. Smallwood, on the same date, a company check for $7000.00, post-dated for September 7, 1992. Mr. Howell then advised Mr. Smallwood that the check was not "good" at that time.

Mr. Smallwood testified that in approximately the first or second week of December 1992 Mr. Howell told him that the watch had been sold. However, at trial Mr. Smallwood stated that he did not know who sold the watch or to whom it was sold. On December 20, 1992, Mr. Smallwood then deposited the Galleria check for $7000.00 into his bank account. On December 29, 1992, the check was returned to him due to insufficient funds. Other attempts by Mr. Smallwood to collect on the check were unsuccessful.

Mr. Howell testified that in late December of 1992 the Bank of Brentwood repossessed all of Galleria's inventory, and in April or May of 1993 the Department of Revenue closed Galleria. Mr. Howell stated that he did not sell the watch, and that he did not know whether the watch had been sold or whether it had been seized.

Mr. Howell filed for relief under Chapter 7 of the Bankruptcy Code in March 11, 1993. Mr. Smallwood sued Mr. Howell in state court, and Mr. Howell subsequently added Mr. Smallwood as a pre-petition unsecured creditor.

## DISCUSSION

Under 11 U.S.C. § 523(a)(4), debts procured by fraud or defalcation while acting in a fiduciary capacity are excepted from discharge. In order for a debt to be declared non-dischargeable under this section of the Bankruptcy Code, the creditor must first prove that a fiduciary relationship existed between the creditor and the debtor, then the creditor must prove that fraud or defalcation occurred while the fiduciary relationship existed. Although the Code does not define the term "fiduciary," the Supreme Court long ago established that under § 17(a)(4) of the Bankruptcy Act, which was the predecessor to § 523(a)(4) of the Bankruptcy Code, the term "fiduciary" as it is used here applies only to "express" or "technical" trusts, and does not extend to implied or constructive trusts, which are trusts that are imposed on transactions by operation of law as a matter of equity, because of misconduct. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982); *see also Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 298, 11 L.Ed. 236 (1844).

Generally, technical trusts are created by an agreement between the parties to impose a trust relationship. *In re Levitan*, 46 B.R. 380, 384 (Bankr.E.D.N.Y.1985). Technical trusts may also be created by a statute that specifically imposes fiduciary obligations on a party. *Id.* However, the plaintiff does not assert, and the court does not find, that the debtor was a fiduciary under a statutory trust.

The plaintiff, Mr. Smallwood argues that a fiduciary relationship existed because the plaintiff entrusted funds to Mr. Howell for a specific purpose. The plaintiff cites *Hamby v. St. Paul Mercury Indem. Co.*, 217 F.2d 78 (4th Cir.Va.1954) in support of this argument. The *Hamby* case is distinguishable from the case at bar, because the *Hamby* case dealt with a real estate agent who was given money by his client to pay off liens on a property. The Fourth Circuit specifically noted that the *Hamby* case did not involve a constructive trust.

The court finds that for the purposes of exclusion from discharge under § 523(a)(4), no fiduciary relationship existed between Mr. Howell, the debtor/defendant, and Mr. Smallwood, because no express or technical trust was ever created between these two parties. The plaintiff purchased the watch from the defendant's business, and the business essentially held the watch for sale on a consignment basis. Courts generally require that in order for a fiduciary relationship to exist when there is a consignment, the consignment proceeds must be segregated and must not be available for the consignees general use. *In re Sutton* at 394; *see also Hurlbert v. Drake*, 5 B.R. 149 (Bankr.D.Idaho 1980); *DL & B Oil Company v. Dawson*, 16 B.R. 343 (Bankr.N.D.Ill.1982). In this case, there was no evidence that the proceeds of the sale of the watch were segregated, and there was no evidence presented that the parties even intended that the proceeds were to be segregated. Therefore only a debtor-creditor relationship existed, as opposed to a trust relationship. *See In re Farrell & Howard Auctioneers, Inc.*, 172 B.R. 712 (Bankr.D.Mass. 1994). Although it is undisputed that Mr. Smallwood never actually received payment for the watch, and although a court, as a matter of equity, could find that an implied trust existed, the fact remains that the parties' consignment relationship did not rise to the level of an express trust as required by § 523(a)(4). Because the court finds that no fiduciary relationship existed it is unnecessary for this court to determine whether fraud or defalcation occurred.

The plaintiff also argues that it can be inferred that Mr. Howell converted the money that Mr. Smallwood paid to Galleria for the watch to his own use because he personally endorsed one of Mr. Smallwood's checks. Pursuant to 11 U.S.C. § 523(a)(4), a debt resulting from embezzlement by the debtor can also be excepted from discharge. Under federal law, embezzlement is commonly defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Carlton*, 26 B.R. 202 (Bankr.M.D.Tenn.1982) (quoting *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295, 40 L.Ed. 422 (1895)); *In re Sutton*, 39 B.R. 390, 395 (Bankr.M.D.Tenn.1984). In order to prove embezzlement, one must establish "fraud in fact" which involves moral turpitude or intentional wrong. *Sutton* at 395; *In re Gumieny*, 8 B.R. 602, 605 (Bankr. E.D.Wis.1981). Embezzlement must be proven by clear and convincing evidence. *Sutton* at 395; *Matter of Storms*, 28 B.R. 761, 765 (Bankr.E.D.N.C.1983). Although the evidence showed that one of Mr. Smallwood's checks was personally endorsed by the debtor, there was no evidence presented that the check was deposited into any bank account other than the Galleria corporate account. The plaintiff has failed to establish clearly and convincingly that the debtor intentionally committed actual fraud.

Finally, the debtor contends that he is not personally indebted to the plaintiff. Likewise, the plaintiff has presented no proof that would support a finding by this court that the debtor is personally liable to Mr. Smallwood for this debt, and he has cited no authority to support the proposition that corporate officers are fiduciaries with respect to creditors of the corporation.

## CONCLUSION

Because the defendant/debtor was not a fiduciary for § 523(a)(4) purposes, and because the plaintiff has failed to prove that the debtor committed embezzlement, the court finds and concludes that this particular debt to the plaintiff shall not be excluded from discharge under 11 U.S.C. § 523(a)(4).

**IT IS THEREFORE ORDERED, AND NOTICE IS HEREBY GIVEN** that the plaintiff's request to deny discharge of defen-

dant's debt to him pursuant to 11 U.S.C. § 523(a)(4) is denied.